1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    CLINT LIDDICOTE,                          No. 2:22-cv-02316-TLN-SCR

12                    Plaintiff,

13            v.                                 **ORDER**

14    LES SCHWAB TIRE CENTERS OF
      CALIFORNIA, LLC,
15
                      Defendant.
16

17

18            This matter is before the Court on Defendant Les Schwab Tire Centers of California,

19    LLC's ("Defendant") Motion for Summary Judgment.  (ECF No. 24.)  Plaintiff Clint Liddicote

20    ("Plaintiff") filed an opposition.  (ECF No. 30.)  Defendant filed a reply.  (ECF No. 32.)  For the

21    reasons set forth below, the Court GRANTS in part and DENIES in part Defendant's motion.

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28
                                                 1

1      **I.**       F<small>ACTUAL AND</small> P<small>ROCEDURAL</small> B<small>ACKGROUND</small>[1]

2          This case involves an employment discrimination dispute.  Defendant is a tire retail

3  company and operates a tire center in Woodland, California.  (ECF No. 32-1 at 3.)  The services

4  performed at tire centers require technical competence, physical ability, and precision for work to

5  be performed without injury to employees or customer property.  (*Id.*)  Managerial staff (the Store

6  Manager and Assistant Manager) are expected to be "working managers," meaning they are

7  involved in all aspects of tire center operations, including working in the service bays.  (*Id.* at 3–

8  4.)  Assistant Managers are required to: supervise tire center employees; monitor activities in the

9  service bays; perform technical duties such as tire and wheel repair and installation; assist in

10  service bay work; and demonstrate the use of tools/equipment.  (*Id.* at 4.)

11          Plaintiff was an Assistant Manager at Defendant's Woodland tire center.  (*Id.*)  Store

12  Manager Scott Lawrence ("Lawrence") was Plaintiff's supervisor from May 2012 to November

13  30, 2020.  (*Id*. at 4.)  In November 2017, Plaintiff injured his shoulder.  (*Id*. at 7.)  From

14  November 2017 to early 2018, Lawrence arranged for Plaintiff to "take it easy" by having other

15  employees lift objects for him.  (*Id*.)  In July 2018, Plaintiff sought treatment for his shoulder

16  injury and his doctor advised him that he should not lift more than 15 pounds or perform

17  overhead work.  (*Id*. at 8.)  Lawrence approved light duty accommodations for Plaintiff's

18  shoulder injury.  (*Id*.)

19          In March 2019, Plaintiff underwent shoulder surgery.  (*Id.* at 10.)  Around April 2019,

20  Plaintiff requested and was approved for a leave of absence for surgery and post-operative

21  recovery.  (*Id*.)  When Plaintiff returned from surgery, Lawrence approved a temporary work

22  restriction of no lifting at all.  (*Id*.)  In or around May 2019, Lawrence informed Plaintiff that his

23  restrictions could not be accommodated indefinitely.  (*Id*. at 11.)

24          On or about October 1, 2019, Plaintiff's doctor told him that his work restrictions

25  (including not lifting more than 15 pounds, performing overhead work, or reaching) were likely

26  permanent.  (*Id*. at 12.)  On November 12, 2019, Plaintiff's physician set Plaintiff's "duty status"

27

28      [1]       The following facts are undisputed unless otherwise noted.

as "no use of right arm." (*Id.*)  On November 13, 2019, Defendant requested that Plaintiff's physician complete a medical certification so it could better understand his restrictions and make an informed decision about how to proceed.  (*Id.*)  In late November 2019, Defendant placed Plaintiff on a leave of absence to give him "some time away [to] be able to heal." (*Id.* at 12.)  Defendant designated Plaintiff's leave as protected by the Family Medical Leave Act ("FMLA") beginning on November 26, 2019.  (*Id.* at 12–13.)

On or about January 28, 2020, Plaintiff's doctor submitted a medical certification form indicating that Plaintiff's limitations (unable to lift over 10 pounds, no overhead work, no reaching) were permanent.  (*Id.* at 13.)  Plaintiff's protected leave of absence under the FMLA expired on January 31, 2020.  (*Id.*)  After Plaintiff's physician confirmed that Plaintiff's restrictions were permanent, Defendant determined it needed to assign an Assistant Manager to the Woodland store who was able to perform the essential functions of the job.  (*Id.* at 13–14.)  In February 2020, Plaintiff was stepped down to a placeholder role of Sales and Service, to remain in effect for the remainder of his leave of absence and his ability to return to work as an Assistant Manager would be reassessed at the end of his leave in November 2020.  (*Id.* at 14–15.)

On or around March 2, 2020, Plaintiff sent an email to Shelley Wagner ("Wagner"), Human Resources Business Partner, and asked to be reinstated.  (*Id.* at 15.)  Wagner responded by email and requested that Plaintiff provide a time/date when they could discuss his request.  (*Id.*)  Wagner then followed up with a letter on March 18, 2020, inviting Plaintiff to provide updated medical information if his restrictions had changed, so they could discuss reinstatement or modified work.  (*Id.*)  Plaintiff did not respond to Wagner's offer to discuss his request for reinstatement.  (*Id.*)

In June 2020, Evan Marlowe, M.D., a Qualified Medical Examiner, confirmed Plaintiff's restrictions of "limited lifting, pushing, and pulling 20 pounds." (*Id.*)  On July 7, 2020, Dr. Marlowe again confirmed that Plaintiff's restrictions still included no lifting, pushing, pulling over 20 pounds, and no prolonged/repetitive work overhead.  (*Id.*)

In August or September 2020, Steve Amstutz ("Amstutz"), Store Manager for the tire center in Antelope, California, spoke with Plaintiff about the possibility of taking a position there

as a Sales and Administration, a mainly sedentary position.  (*Id*.)  Although the Antelope tire

center did not have a Sales and Administration position at the time due to the volume of work

handled there, Amstutz looked into whether the Antelope tire center had enough work to justify

adding a Sales and Administration position for Plaintiff.  (*Id*. at 17.)  In October 2020, Plaintiff

informed Amstutz that he was caring for his children at home and was still considering whether

he wanted to return to work.  (*Id*. at 17–18.)

On November 16, 2020, Defendant's leave administration department sent an email to

Plaintiff requesting that his medical provider complete an updated medical certification.  (*Id*. at

18.)  Plaintiff did not respond to this request.  (*Id*.)  On November 27, 2020, Defendant informed

Plaintiff that his leave had ended and, because he was unable to perform the essential functions of

his position and had not provided an updated medical certification, his employment was being

terminated effective November 30, 2020.[2]  (*Id*. at 19.)

On November 9, 2021, Plaintiff filed a Charge of Discrimination against Defendant for

disability harassment, discrimination, and retaliation, and he received a Dismissal and Notice of

Rights (i.e. "right to sue" letter) on the same date.  (*Id*. at 20.)  On January 8, 2022, Plaintiff

executed a California Division of Workers' Compensation settlement agreement (the

"Compromise and Release Agreement") to settle a workers' compensation claim he had filed with

respect to his shoulder injury.  (*Id*.)  The Compromise and Release Agreement provided for a

settlement payment to Plaintiff and included a release of all claims, known or unknown, against

Defendant that arose or may arise as a result of Plaintiff's shoulder injury only.  (*Id*.)

On January 27, 2022, Plaintiff executed a separate Settlement and Release Agreement (the

"Settlement and Release Agreement") with Defendant.  (*Id*. at 20–21.)  The Settlement and

Release Agreement, which included consideration in addition to the consideration set forth in the

Compromise and Release Agreement, contained a provision releasing all known or unknown

claims.  (*Id*. at 22.)

---

[2]    Plaintiff purports to dispute this fact by arguing he was able to perform the essential functions of his position with reasonable accommodation via reassignment to the Antelope position.  However, the Court finds this fact about the information conveyed by Defendant to be undisputed.

On November 8, 2022, Plaintiff filed this action in Yolo County Superior Court, alleging claims for: (1) wrongful termination in violation of public policy pursuant to California Government Code § 12940(a); (2) failure to prevent discrimination and harassment pursuant to California Government Code § 12940(k); (3) failure to engage in the interactive process pursuant to California Government Code § 12940(n); (4) violations of the Rehabilitation Act and Americans with Disabilities Act ("ADA"); and (5) retaliation pursuant to California Government Code § 12940(h).  (ECF No. 1-1 at 6–23.)  Defendant filed the instant motion for summary judgment on August 8, 2024.  (ECF No. 24.)

## II.    STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id*. at 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

1    support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

2    demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

3    suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

4    the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

5    the nonmoving party.  *Id*. at 251–52.

6         In the endeavor to establish the existence of a factual dispute, the opposing party need not

7    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

8    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

9    trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

10   to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

11   trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's

12   note on 1963 amendments).

13        In resolving the summary judgment motion, the court examines the pleadings, depositions,

14   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

15   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

16   of the opposing party is to be believed and all reasonable inferences that may be drawn from the

17   facts pleaded must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.

18   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

19   produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight*

20   *Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally,

21   to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more

22   than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

23   *Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational

24   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

25   ///

26   ///

27   ///

28   ///

1        III.    **ANALYSIS**

2            In moving for summary judgment, Defendant argues: (1) the release provision in the

3    Settlement and Release Agreement bars Plaintiff's claims; and (2) each claim fails on the merits.

4    The Court will address Defendant's arguments in turn.

5                    A.    Settlement and Release Agreement

6            First, Defendant argues the plain language of the Settlement and Release Agreement bars

7    Plaintiff's claims.  (ECF No. 24-1 at 16.)  In opposition, Plaintiff argues extrinsic evidence shows

8    that he signed the Settlement and Release Agreement with the understanding that he was

9    releasing Defendant from liability only for his workers' compensation claims, not his other civil

10   claims.  (ECF No. 30 at 9.)

11           Under California law, "Where the meaning of the words used in a contract is disputed, the

12   trial court must provisionally receive any proffered extrinsic evidence which is relevant to show

13   whether the contract is reasonably susceptible of a particular meaning." *Wolf v. Superior Ct.*, 114

14   Cal. App. 4th 1343, 1350–51 (2004), *as modified on denial of reh'g* (Feb. 19, 2004) (citing

15   *Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.*, 69 Cal. 2d 33, 39–40, 69 (1968)).

16   "Indeed, it is reversible error for a trial court to refuse to consider such extrinsic evidence on the

17   basis of the trial court's own conclusion that the language of the contract appears to be clear and

18   unambiguous on its face." *Id.* at 1351.  "Even if a contract appears unambiguous on its face, a

19   latent ambiguity may be exposed by extrinsic evidence which reveals more than one possible

20   meaning to which the language of the contract is yet reasonably susceptible." *Id.*

21           In the instant case, the Settlement and Release Agreement states in relevant part:

22               **PLEASE READ CAREFULLY.  THIS TERMINATION OF
                 EMPLOYMENT AGREEMENT AND COMPLETE RELEASE
23               INCLUDES A RELEASE OF ALL KNOWN OR UNKNOWN
                 CLAIMS**
24
     (ECF No. 24-4 at 89 (emphasis in original).)  Defendant asserts the release provision was
25
     intended to release all claims against Defendant, including the civil claims alleged in the instant
26
     case.  (ECF No. 24-1 at 8.)  Defendant argues Plaintiff executed the Settlement and Release
27
     Agreement and the Comprise and Release Agreement on different dates, the agreements contain
28

                                            7

1    completely different language, and Plaintiff received monetary consideration for the Settlement

2    and Release Agreement that was separate and distinct from the consideration he received for the

3    earlier Compromise and Release Agreement.  (*Id.* at 16–17.)  Defendant emphasizes Plaintiff

4    specifically agreed to "release all known or unknown claims" and did so after filing a FEHA

5    complaint.  (*Id.* at 17.)  Defendant also emphasizes that Plaintiff was represented by counsel when

6    he executed both agreements and Plaintiff acknowledged that "he may be waiving significant

7    legal rights or claims by signing [the Agreement]."  (*Id.*)  Lastly, Defendant points out that the

8    release provision in the Settlement and Release Agreement is in bold, capitalized letters, set off

9    from the rest of the terms, and directly before the signature line.  (*Id.*)  For these reasons,

10   Defendant argues Plaintiff knew or should have known the Settlement and Release Agreement

11   would apply to the claims alleged in the instant case.  (*Id.*)

12         Defendant heavily relies on *Jefferson v. Cal. Dep't of Youth Auth.*, 28 Cal. 4th 299 (2002).

13   (*Id.* at 16.)  In *Jefferson*, the plaintiff signed a workers' compensation compromise and release

14   form that included attached language that "releases and forever discharges [the Youth Authority]

15   from all claims and causes of action, whether now known or ascertained, or which may hereafter

16   arise or develop as a result of [the claimed] injury."  28 Cal. 4th at 302.  The *Jefferson* court held

17   this broad release language encompassed plaintiff's civil claims because: "(1) the parties included

18   an attachment in their settlement agreement that made clear their intent to settle matters outside

19   the scope of workers' compensation; and (2) Jefferson offered no extrinsic evidence establishing

20   the parties' intent to exclude her FEHA claim from the settlement."  *Id*. at 394.

21         Unlike the plaintiff in *Jefferson*, Plaintiff in the instant case *has* provided extrinsic

22   evidence to show the parties' intent to release only workers' compensation claims.  First, Plaintiff

23   cites his deposition testimony, in which he asserts he believed he was only releasing his workers'

24   compensation claims by signing the Settlement and Release Agreement.  (ECF No. 30 at 10

25   (citing ECF No. 30-2 at 9–10).)  Second, Plaintiff cites an email thread between Jordan K. Dixon

26   ("Dixon") — Plaintiff's then-counsel — and Defendant's counsel.  (ECF No. 30-2 at 36.)  The

27   emails appear to show Dixon negotiating the terms of the Settlement and Release Agreement,

28   including the following message from Dixon:

1

2

3

> This release would waive FEHA claims, and frankly, I don't have
> enough of a background in the area of law to recommend it or not . .
> . I am fine with advising he sign a release but as drafted, it presents
> a number of issues.

4   (*Id.* (citing ECF No. 30-2 at 39).)  Third, Plaintiff cites a prior, redlined draft of the Settlement

5   and Release Agreement.  (ECF No. 30-2 at 47.)  Specifically, Plaintiff argues the following

6   language in the prior draft identified Plaintiff's civil claims, was struck through, and does not

7   appear in the final draft:

8

9

10

11

> Claimant specifically waives and releases any employment,
> reinstatement, or re-employment rights he may otherwise have under
> the California Fair Employment and Housing Act, the California
> Family Rights Act, Title VII of the Civil Rights Act as amended, the
> American's with Disabilities Act, the Labor Management Relations
> Act . . . .

12   (*Id.* (citing ECF No. 30-2 at 49).)  Based on the foregoing extrinsic evidence, Plaintiff

13   argues it is for the trier of fact to decide whether Plaintiff released his ability to bring his

14   civil claims.  (*Id.* at 11–12.)

15   The Court concludes the extrinsic evidence presented by Plaintiff raises a genuine issue of

16   fact as to the scope of the release, and a reasonable jury could find based on the extrinsic evidence

17   that the release only applies to Plaintiff's workers' compensation claims.  *See Asare v. Hartford*

18   *Fire Ins. Co.*, 1 Cal. App. 4th 856, 861 (1991) (holding that the plaintiff's extrinsic evidence was

19   enough to make the release agreement reasonably susceptible to plaintiff's interpretation that it

20   did not release plaintiff's FEHA claim); *see also Manneh v. Iverness Med. Innovations, Inc.*, No.

21   08CV653 WQH AJB, 2009 WL 4642390, at *9 (S.D. Cal. Dec. 1, 2009) (finding a triable issue

22   as to whether the plaintiff released his claims based on extrinsic evidence, such as plaintiff's

23   refusal to sign an earlier draft of the agreement, emails from counsel, and plaintiff's declarations

24   that he did not intend to waive the claims at issue).

25   Therefore, the Court DENIES Defendant's motion for summary judgment on this basis.

26   B.    Plaintiff's Claims

27   Defendant next argues each of Plaintiff's claims fails on the merits.  (ECF No. 24-1 at 18–

28   26.)  In opposition, Plaintiff concedes his fourth claim and does not respond to Defendant's

9

1  argument regarding his fifth claim.  (*See generally* ECF No. 30.)  As such, the Court GRANTS

2  Defendant's motion for summary judgment as to Claims Four and Five.  *See Jenkins v. Cnty. of*

3  *Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by not raising

4  them in opposition to a motion for summary judgment).  The Court will address Plaintiff's

5  remaining claims in turn.

6  *i.  Claim One*

7  In Claim One, Plaintiff alleges Defendant wrongfully terminated him in violation of

8  public policy under the Fair Employment and Housing Act ("FEHA"), California Government

9  Code § 12940(a) ("§ 12940(a)").[3]  (ECF No. 1-1 at 13–14.)

10  FEHA makes it "an unlawful employment practice to discharge a person from

11  employment or discriminate against the person in the terms, conditions, or privileges of

12  employment, because of physical or mental disability or medical condition."  *Scotch v. Art Inst. of*

13  *California-Orange Cnty., Inc.*, 173 Cal. App. 4th 986, 1002 (2009) (citing Cal. Gov't Code §

14  12940(a)).  The essential elements of a FEHA disability discrimination claim are as follows: (i)

15  "the employee . . . is disabled," (ii) "is otherwise qualified to do the job," and (iii) "was subjected

16  to an adverse employment action because of such disability."  *Furtado v. State Pers. Bd.*, 212 Cal.

17  App. 4th 729, 744 (2013).  A "qualified individual" within the meaning of the second element "is

18  someone who is able to perform the essential functions of his or her job, with or without

19  reasonable accommodation."  *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 378 (2015).

20  Defendant argues Claim One fails because Plaintiff was not a "qualified individual" at the

21  time of his termination.  (ECF No. 24-1 at 21–22.)  More specifically, Defendant argues it is

22  undisputed that Plaintiff could not lift more than 10 pounds, perform overhead work, or reach,

23  which were all essential functions of the Assistant Manager position.  (*Id.* at 20.)  Defendant

24  emphasizes that Plaintiff's physician determined in January 2020 that Plaintiff's disability was

25  permanent.  (*Id.* at 10–11.)

26  ───────────────

[3]      Plaintiff fails to include a separate claim for discrimination in violation of FEHA.

27  However, Plaintiff seems to allude throughout their opposition that their wrongful termination
claim is based on the discriminatory actions of Defendant.  (*See* ECF No. 30 at 12, 13.)

28  Therefore, the Court construes Claim One as encompassing a discrimination claim.

1    In opposition, Plaintiff does not dispute Defendant's arguments about the essential duties

2    of the Assistant Manager position or about his inability to perform the essential duties of the

3    Assistant Manager position. (ECF No. 30 at 12–13.) Plaintiff's arguments lack clarity, but he

4    seems to argue he was a qualified individual because he could have been reassigned to a position

5    of Sales and Administration at the Antelope Store.[4] (*Id.*)

6    The Court agrees with Defendants that Plaintiff has not created a triable issue as to

7    whether he is a qualified individual under FEHA. It is undisputed that Defendant's managerial

8    staff — including Assistant Managers — were expected to be "working managers," meaning they

9    were involved in all aspects of the tire center operations, including working in the service bays.

10    (ECF No. 32-1 at 2–3.) Plaintiff does not dispute that his essential job duties as Assistant

11    Manager included working in the service bays, changing tires or brakes, balancing and rotating

12    tires on vehicles and trucks, and performing alignments. (*Id.* at 4.) Moreover, Plaintiff does not

13    dispute that these essential job duties required him to lift more than ten pounds, engage in

14    overhead work, and reach objects. (ECF No. 24-4 at 15–17, 39–43.) Plaintiff also does not

15    dispute that he suffers from a permanent injury that requires permanent work limitations,

16    including a lifting restriction of ten pounds, no overhead work, and no reaching. (ECF No. 32-1

17    at 13.) In short, it is undisputed there were no accommodations that would allow Plaintiff to

18    perform the essential functions of the Assistant Manager position.

19    The Court is not persuaded by Plaintiff's argument about the Sales and Administration

20    position in the Antelope store. (ECF No. 30 at 13.) Plaintiff states he "took it upon himself and

21    applied for a position at the Antelope store with Steve Amstutz around September 2021." (*Id.*)

22    However, Plaintiff's does not cite — and the Court cannot locate — evidence to support this

23    assertion. As such, it is undisputed that Defendant was merely considering the possibility of

24    creating this position in the Antelope store if the store had enough business to support

25    _____

26    [4]    Plaintiff also argues Defendant further discriminated against Defendant when it "stepped
       him down" into the Sales and Associate position in November 2019, as that position had an even

27    greater lifting requirement and ensured he would not be able to return to work. (ECF No. 30 at
       13.) Plaintiff fails to cite authority to support his argument or explain how this argument relates

28    to whether Plaintiff is a qualified individual under FEHA, and the Court declines to address it.

1    establishing the position, and that Plaintiff ultimately failed to respond affirmatively that he was

2    interested in such a position.  (ECF No. 32-1 at 16–17.)  In other words, it is undisputed that the

3    Sales and Administration position did not exist.  Therefore, Plaintiff's argument is unavailing.

4    *See Nealy*, 234 Cal. App. 4th at 377 ("FEHA requires the employer to offer the employee

5    'comparable' or 'lower graded' vacant positions for which he or she is a qualified," but "does not

6    require the employer to promote the employee or create a new position for the employee to a

7    greater extent than it would create a new position for any employee, regardless of disability.").

8           For these reasons, the Court GRANTS Defendant's motion for summary judgment as to

9    Claim One.

10                              *ii.  Claim Two*

11          In Claim Two, Plaintiff alleges Defendant failed to prevent discrimination and harassment

12    in violation of California Government Code § 12940(k).  (ECF No. 1-1 at 15.)

13          FEHA prohibits employers from "fail[ing] to take all reasonable steps necessary to

14    prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).  For a

15    failure-to-prevent claim, plaintiff must show: (1) he was subjected to discrimination, harassment,

16    or retaliation; (2) defendant failed to take all reasonable steps to prevent discrimination,

17    harassment, or retaliation; and (3) this failure caused plaintiff to suffer injury, damage, loss or

18    harm.  *Leland v. City & Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008).

19          Defendant argues Claim Two fails because Plaintiff does not assert a harassment claim

20    and was not a qualified individual for a discrimination claim for the same reasons discussed

21    above.  (ECF No. 24-1 at 25.)  In opposition, Plaintiff vaguely argues Defendant discriminated

22    against him by requiring Plaintiff to work beyond his work restrictions, demoting him from the

23    Assistant Manager position, failing to engage in the interactive process, failing to provide

24    reasonable accommodation with a "sedentary position" at the Antelope store, and stepping

25    Plaintiff down to a Sales and Associate position with increased lifting requirements.  (ECF No. 30

26    at 15.)  Notably, Plaintiff does not address how he was harassed by Defendant, nor does he

27    respond to Defendant's argument that Plaintiff's § 12940(k) claim fails without a viable claim for

28    discrimination or harassment.  (*See id.*)

                                             12

1    Courts have interpreted "a failure to prevent discrimination claim [to be] essentially

2    derivative of a [FEHA] discrimination claim." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781,

3    804 (N.D. Cal. 2015) (citing *Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998)).

4    As discussed, Plaintiff does not have a viable discrimination claim.  Further, Plaintiff does not

5    allege a harassment claim, nor does he raise any arguments about his alleged harassment in his

6    opposition.  Absent any argument from Plaintiff to the contrary, the Court concludes the

7    derivative § 12940(k) claim fails.  *See Paleny v. Fireplace Prods. U.S., Inc.*, 103 Cal. App. 5th

8    199, 213 (2024), *review denied* (Sept. 18, 2024) ("Because each of appellant's causes of action

9    for harassment, discrimination, and retaliation fail as a matter of law, this dependent cause of

10   action [for violation of § 12940(k)] likewise fails.").

11   Therefore, the Court GRANTS Defendant's motion for summary judgment as to Claim

12   Two.

13   *iii.   Claim Three*

14   In Claim Three, Plaintiff alleges Defendant failed to engage in the interactive process in

15   violation of California Government Code § 12940(n).  (ECF No. 1-1 at 16.)

16   "Under FEHA, an employer must engage in a good faith interactive process with the

17   disabled employee to explore the alternatives to accommodate the disability."  *Nealy*, 234 Cal.

18   App. 4th at 379 (citing Cal. Gov't Code § 12940(n)).  "FEHA requires an informal process with

19   the employee to attempt to identify reasonable accommodations, not necessarily ritualized

20   discussions."  *Id.*  "Although it is the employee's burden to initiate the process, no magic words

21   are necessary, and the obligation arises once the employer becomes aware of the need to consider

22   an accommodation."  *Scotch*, 173 Cal. App. 4th at 1013.  "Once the interactive process is

23   initiated, the employer's obligation to engage in the process in good faith is continuous."  *Id.*

24   "[T]he employers obligation to engage in the interactive process extends beyond the first attempt

25   at accommodation and continues when the employee asks for a different accommodation or

26   where the employer is aware that the initial accommodation is failing and further accommodation

27   is needed."  *Id.*

28   ///

1    Defendant argues Plaintiff ended the interactive process, citing Plaintiff's repeated failure

2    to respond to Defendant's attempts to contact Plaintiff and requests for updated medical

3    information. (ECF No. 24-1 at 23.) In opposition, Plaintiff argues he found a reasonable

4    accommodation that Defendant could have provided that was "mostly sedentary" in the Antelope

5    office, Defendant failed to provide such information or any information of available positions,

6    and Plaintiff made contact with "Ms. Steve." (ECF No. 30 at 14.)

7    Plaintiff's argument lacks clarity, meaningful analysis, and any citation to evidence. *See*

8    *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (affirming grant of summary judgment in

9    defendants' favor and stating "[w]e rely on the nonmoving party to identify with reasonable

10   particularity the evidence that precludes summary judgment"); *Carmen v. S.F. Unified Sch. Dist.*,

11   237 F.3d 1026, 1031 (9th Cir. 2001) (affirming grant of summary judgment in defendants' favor

12   and stating "[t]he district court need not examine the entire file for evidence establishing a

13   genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate

14   references so that it could conveniently be found"); *Indep. Towers of Wash. v. Washington*, 350

15   F.3d 925, 929 (9th Cir. 2003) ("When reading [appellant's] brief, one wonders if [appellant], in

16   its own version of the 'spaghetti approach,' has heaved the entire contents of a pot against the

17   wall in hopes that something would stick. We decline, however, to sort through the noodles in

18   search of [appellant's] claim.").

19   Even taking the evidence in the light most favorable to Plaintiff, the undisputed evidence

20   establishes Plaintiff caused the breakdown in the interactive process. *See Gelfo v. Lockheed*

21   *Martin Corp.*, 140 Cal. App. 4th 34, 62 n.22 (2006) (both parties have an obligation to engage in

22   good faith in the interactive process and "responsibility for [a] breakdown [in communications]

23   lies with the party who fails to participate in good faith."); *Weeks v. Union Pac. R.R. Co.*, 137 F.

24   Supp. 3d 1204, 1222 (E.D. Cal. 2015) ("[I]f a plaintiff is responsible for the breakdown of an

25   interactive process, then the plaintiff cannot recover for a failure to provide reasonable

26   accommodation."). It is undisputed that Plaintiff did not respond to Wagner's offer to discuss his

27   request for reinstatement. (ECF No. 32-1 at 16.) It is also undisputed that Amstutz spoke with

28   Plaintiff about the possibility of creating a sedentary position for Plaintiff, and that Plaintiff

1    informed Amstutz that he was "caring for his children at home" and was "still considering

2    whether he wanted to return to work." (*Id.* at 17–18.)  It is undisputed Amstutz did not hear from

3    Plaintiff thereafter.  (*Id.* at 18.)  Lastly, it is undisputed Plaintiff failed to respond to Defendant's

4    request to provide updated medical information in November 2020.  (*Id.*)  Absent any citations to

5    evidence, meaningful analysis, or coherent argument from Plaintiff, the Court concludes Plaintiff

6    fails to raise a triable issue of fact as to this claim.

7         Therefore, the Court GRANTS Defendant's motion for summary judgment as to Claim

8    Three.

9    **IV.    CONCLUSION**

10        For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's

11   Motion for Summary Judgment.  (ECF No. 24.)  Because the Court concludes Defendant is

12   entitled to judgment as a matter of law as to all Plaintiff's claims, the Clerk of Court is directed to

13   enter judgment in Defendant's favor and close the case.

14        IT IS SO ORDERED.

15   Date: March 28, 2025

16

17

18   _____

19   TROY L. NUNLEY
     CHIEF UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28